IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


**BRENDA LOWERY, et. al.,**
      **Plaintiffs,**

**vs.**                        **No. 3:08cv186/MCR/MD**

**CASH'S CABANAS, INC. et al.**
      **Defendant.**
_____

### SPECIAL MASTER'S
### REPORT AND RECOMMENDATION

This case was referred to the undersigned pursuant to N.D. Fla. Loc. R. 54.1(F) to determine the plaintiffs' entitlement to attorneys' fees and costs. (Doc. 186; see doc. 180, 181 & 184). After oral argument on September 30, 2010 (doc. 189) the parties were directed to file supplemental briefs. The parties complied and filed their memoranda under seal. (Doc. 190, 197). Although not authorized to do so, defendants subsequently filed a response to plaintiffs' memorandum of law. (Doc. 198). Plaintiffs objected (doc. 199), and defendants' unauthorized response to the plaintiffs' memorandum will be disregarded.


### BACKGROUND

This action was commenced in May of 2008. There were three initial named plaintiffs: Nalynle Torres, Kariso Hutto and Brenda M. Lowery. The complaint alleged violations of the Fair Labor Standards Act ("FLSA"), Breach of Common Law Contract, Quantum Meruit, and with respect to plaintiff Lowery only, a violation of

the Florida Whistleblower Act. The progression of the case was relatively uneventful. Other than production of records by defendants, there was little discovery, there were no depositions, and there was no trial.

Defendants moved to dismiss many of the individual claims (doc. 15), plaintiffs moved to allow notice to similarly situated employees and to approve interrogatory to defendants seeking the identity of similarly situated employees (doc. 16) and to certify a class (doc. 18). The court scheduled oral argument on the three motions (Doc. 28). Before the date of the oral argument, plaintiffs filed notice of filing opt-in for Rebecca May, Carrie Brown, and Lissa Winkler (doc. 35, 38, 41). Defendants filed an emergency motion for preliminary injunction and to strike the opt-in notices, which was denied. (Doc. 44, 45 & 46).

At the hearing, the defendants' motion to dismiss was granted as to Count II and denied as to Counts I and III, and plaintiffs were directed to file an amended complaint within 20 days. (Doc. 55, 57). Defendants were directed to respond to plaintiffs' interrogatory, and plaintiffs were given 75 days to file any additional opt-in notices. A notice of consent to opt in on behalf of Judy Simmons was filed in open court. (Doc. 56). The court denied the plaintiffs' request to certify their breach of contract and quantum meruit claims as a class action. (Doc. 57). After plaintiffs filed their amended complaint, they also filed notices of opt-in for Tracy Barnett, Jacob Wayne Hitchcock, Tommee Creamer, Denise Sawyer, Mary Cathryn Schemel, Richard Wheeler, and Percy Williams. (Doc. 65, 66, 68, 69, 70 & 71). Thus, there were a total of fourteen plaintiffs, although one, Mary Cathryn Schemel, was dismissed from the case for lack of prosecution (see doc. 160, 162).

Plaintiffs filed a motion for judgment on the pleadings (doc. 81) with respect to the joint employer status of the defendants which was amended to reflect the defendants' consent (doc. 85)[1] and ultimately granted (doc. 87). Plaintiffs also filed

---

[1]The initial motion reflected that the parties had conferred but were unable to reach a resolution. (Doc. 81 at 1).

a motion for summary judgment as to Brenda Lowery on count one of the complaint (doc. 89) which was denied (doc. 106) simultaneously with the denial of defendants' motion to dismiss for lack of jurisdiction and for conditional class decertification (doc. 88).

With the initial legal skirmishing out of the way, plaintiffs filed a motion for partial summary judgment (doc. 153).  The parties settled the case before the motion was ruled on.  The court approved the settlement and dismissed the case with the exception of the request for attorneys fees, which remains pending  (Doc. 159, 165 & 167).[2]

After oral argument regarding plaintiffs' fee request, the undersigned directed the parties to submit supplemental memoranda, which have now been received and reviewed.  Plaintiffs' counsel seeks total fees and costs of $175,962.60.  The total amount of the settlement in favor of the plaintiffs was $26,200.  The disparity between the requested fee and cost award and the settlement looms large in the instant dispute.

## LEGAL ANALYSIS

The Fair Labor Standards Act ("FLSA") provides that the court "shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b); *Sahyers v. Prugh, Holliday & Karatinos, P.L.,* 560 F.3d 1241, 1244 (11th Cir. 2009); *Dale v.Comcast Corp.,* 498 F.3d 1216, 1223 n. 12 (11th Cir. 2007); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985); *Wales v. Jack M. Berry, Inc.,* 192 F.Supp. 2d 1313, 1316 (M.D. Fla. 2001).  The resolution of this matter hinges on the interpretation of the term "reasonable" as it applies to the facts of this case.

---

[2]This information has been provided merely as background, to provide some idea of the development and progression of this case.

The district court determined, and the defendants conceded, that twelve of the plaintiffs were prevailing parties under FLSA.[3] (Doc. 179). The degree to which the plaintiffs prevailed, however, is hotly contested. The plaintiffs and the defendants characterize the settlement in vastly different terms, although the facts of the settlement are straightforward. As noted above, seven of the plaintiffs moved for partial summary judgment for a total of $2,033.16 in unpaid wages or overtime. When the case settled, the defendants agreed to pay and the plaintiffs agreed to accept the following amounts:[4]

1) Tracy Barnett– $500.00 (she asked for $14.38 when she moved for summary judgment).

2) Tommie Creamer– $750.00 (she asked for $95.31 when she moved for summary judgment).

3) Brenda Lowery (now Odom)– $14,000.00 (she asked for $882.50 when she moved for summary judgment, but this settlement included her whistleblower claim).

4) Rebecca May– $250.00 (she asked for $46.38 when she moved for summary judgment).

5) Lissa Winkler– $750.00 (she asked for $338.38 when she moved for summary judgment).

6) Richard Wheeler– $1,200.00 (he asked for $590.03 when he moved for summary judgment).

7) Percy Williams– $100 (he asked for $66.18 when he moved for summary judgment).

8) Carrie Brown– $1,800 (she did not move for summary judgment).

---

[3] Mary Cathryn Schemel had previously been dismissed for want of prosecution (doc. 162) and the FLSA claim of the only remaining non-prevailing plaintiff, Judy Simmons, was barred by the applicable statute of limitations.

[4] In order for this report and recommendation to show the relative amounts involved, the parties have consented to have the relevant amounts of settlement, but no other terms of settlement, published (doc. 202).

9) Jacob Hitchcock– $500.00 (he did not move for summary judgment).

10) Karisa Hutto– $750.00 (she did not move for summary judgment).

11) Denise Sawyer– $100.00 (she did not move for summary judgment).

12) Judy Simmons– $500.00 (she did not move for summary judgment).

13) Carol Torres– $5,000.00 (she did not move for summary judgment).

(Doc. 190 at 6-7).[5]  When the motion for partial summary judgment was filed, seventeen months after the suit was commenced, plaintiffs' counsel could prove only that seven plaintiffs were owed $2033.16 in wages and overtime.  The parties who had moved for partial summary judgment recovered $17,550.00, which was $15,516.84 more than they had sought via the summary judgment motion.  The non-moving parties recovered $8,650.00.[6]

Plaintiffs argue that the disparity between the amounts claimed in the motion for summary judgment and the amounts they recovered is evidence that the defendants failed to properly record the plaintiffs' time or properly compensate them.  They further contend that because there has been no showing that any portion of their FLSA claim went uncompensated, they achieved "complete success."  Plaintiffs also contend that the fees they requested are reasonable.  In their memorandum they state:

> On January 12, 2010, counsel for Defendants stipulated that The Employment Law Group, P.C.'s adjusted rates of $325 per hour for partners' services, $205.00 per hour for associates' services, and $100.00 per hour for legal assistant services were reasonable.

[5]The settlement agreement itself was not submitted.  The parties listed these amounts in their supplemental memoranda.  The defendants state that the settlement amounts varied based in part on the parties' employment history with Cash's. (Doc. 197 at 11).  Plaintiff Sawyer worked for Cash's for only one week, and received a settlement of only $100.00, while plaintiff Torres had worked for Cash's for five years, and received a settlement of $5,000.

[6]In plaintiff's memorandum of law, they assert that the "Defendants agreed to pay these Plaintiffs $26,200.00, which was $23,966.87 more than plaintiffs had moved for on partial summary judgment." (Doc. 190 at 10). This figure is somewhat misleading as only seven of the plaintiffs moved for partial summary judgment, and the settlement figure encompasses thirteen plaintiffs and was, after all, a settlement.  Many things go into a settlement beyond the probable recoveries.

(Doc. 190 at 10).  There was some dispute about this initially but on May 17, 2010, defendants agreed that the "rates proposed by [plaintiffs' counsel] are reasonable given the nature of ths case and the prevailing local rates." (Doc. 181 at 10).

The defendants follow this concession by urging a reduction in the lodestar. They say that the degree of success overall was really quite small, and the amount of time spent obtaining only partial success warrants a far smaller fee.

## FEES

The starting point for a fee determination is to determine a reasonable hourly rate and a reasonable number of hours expended.  Here the reasonable hourly rates have been agreed upon.  In calculating the appropriate lodestar in this circuit, the court may be guided by the twelve factors first set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) which are: 1) the time and labor required; 2) the novelty and difficulty of the question; 3) the skill requisite to perform the legal service; 4) the preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.  See *N.A.A.C.P. v. City of Evergreen, Ala.*, 812 F.2d 1332, 1336 n.5 (11th Cir. 1987).  Of those factors, only three favor plaintiffs' counsel: the results obtained, the necessary skill, and the contingency.  As to the rest, this was a simple and desirable case with well settled law, proven by examination of the defendants' own records, with no particular time limitations and for a one-time client.

The lodestar may be adjusted to reflect, for one thing, the results obtained. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (civil rights case); *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).  A plaintiff

who obtains "excellent results" should recover a "fully compensatory fee," while in the case of a plaintiff who has achieved only partial or limited success, the hours expended times the reasonable rate may be an excessive amount. *Hensley v. Eckerhart*, 461 U.S. at 435, 436. "Success" is measurable in different ways. For instance, in some cases, such as the case at bar, the plaintiffs are successful on only one of several claims. In this event, the court must consider whether the failed claims are intertwined with the claims on which plaintiffs were successful. *Id.* 461 U.S. at 433-437, 103 S.Ct. at 1931-1941. A reduction is appropriate if the relief is limited in comparison to the scope of the entire litigation, but where all theories derive from a common core of operative facts, the focus must be on "the significance of overall results as a function of total reasonable hours." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). It "is improper to make a reduction in the lodestar based on a simple ratio of successful issues to issues raised." *Id.* (Citing *Hensley*, 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n.11). Plaintiffs contend that all the claims arose under the same operative facts and thus were inextricable. Defendants dispute this.

Success might, in some circumstances, be quantifiable as a dollar amount. However, an assertion that the dollar amount of the settlement alone should serve as justification for reducing the fee award is not legally supported. In the context of civil rights claims, the Supreme Court has noted that a rule requiring proportionality between the plaintiff's recovery and the attorney's fee "would make it difficult, if not impossible, for individuals with meritorious . . . claims but relatively small potential damages to obtain redress from the courts." *City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 2696, (1986). The same logic applies to claims made under FLSA. See *Pyczynski v. Kirkland's Stores, Inc.*, 2008 WL 544864 (M.D. Fla. 2008) (applying *Riverside* to FLSA claims). There are myriad cases cited in the plaintiffs' rejection of defendants' counter-offer that support the proposition that a low recovery alone does not direct the size of the fee award in civil rights litigation. See

e.g., *Riverside, supra; Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2nd Cir. 2005); *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (discussing general principles behind award of fees); *Mercer v. Duke University*, 401 F.3d 199, 210-211 (4th Cir. 2005) (citing cases) (affirming award of $349,244 in attorneys' fees awarded in Title IX suit yielding nominal damages award of $1 that was litigated for 7 years and appealed three times); *Wadsworth v. Clindon*, 846 F.2d 265, 266 (4th Cir. 1988) (awarding $13,317 in fees where plaintiff's damages in Fair Housing Act case were $1,000); *Estate of Borst v. O'Brien*, 979 F.2d 511, 516-517 (7th Cir. 1992) (citing cases) (affirming award of $47,254 in attorneys fees in § 1983 suit where total damages award was $1,000); *Northington v. Marin*, 102 F.3d 1564 (10th Cir. 1996) (upholding attorneys' fee award of $93,649.61 in § 1983 suit yielding $5,000 judgment); *Morris v. Eversley*, 343 F.Supp.2d 234, 248 (S.D.N.Y. 2004) (awarding fees of $154,900 where plaintiff received $16,000 in compensatory and punitive damages); *Grochowski v. Ajet Const. Corp.*, 2002 WL 465272 (S.D.N.Y. 2002) (awarding fees of $97,207.50 where plaintiffs were awarded $26,000 in damages); (doc. 184 at 8-9). This does not mean that plaintiffs are automatically entitled to all of the requested fees, however. In fact, in several of the cases cited by plaintiff, the fees ultimately awarded to the prevailing plaintiffs, while significantly higher than the amount recovered in the underlying lawsuits, were significantly less than the hours billed or requested. For instance, in *Morris*, plaintiff's counsel spent a total of 3,400 hours on a case that went to trial twice, but only sought payment for 712 attorney hours–the time actually spent on the trial and retrial. *Morris*, 343 F.Supp.2d at 248. In *Grochowski*, although the fee award of $97,207.50 was almost four times the plaintiffs' award of $26,000, it was significantly less than the $249,540 initially sought.[7] 2002 WL 465272. In

---

[7]The large reduction in the fee request was based on the fact that although plaintiffs brought suit under multiple theories, only the FLSA overtime claims survived for trial. Claims under two other federal statutes were dismissed because these statutes do not provide a private right of action, and state common law claims were also dismissed, and hours attributable to those claims or defending against dismissal of those claims that were not inextricably intertwined with the FLSA claims were eliminated. Furthermore, the scope of victory was reduced because only 5 of the original ten plaintiffs

*Wadsworth*, counsel sought over $21,000 but recovered only $13,317. 846 F.2d at 266. Finally, in *Estate of Borst*, the plaintiffs requested $292,833.36 (double the lodestar amount of $146,416.68), but the final award was only $47,254.13. 979 F.2d at 516-517.

The plaintiffs' counsel's law firm, The Employment Law Group ("TELG") is no stranger to a reduction in its requested fees. In *Jackson v. Estell Place, LLC,* 2009 WL 1321506 (E.D. Va. 2009) TELG's request for $86,471.00 in fees was reduced to $36,000.00 after defendants raised several objections including that the hours expended were excessive considering the type and size of the plaintiffs' claims, that plaintiffs should have sought an early settlement and that there were seven categories of fees that were unreasonable, unnecessary or unrelated to successful claims.[8] The court reduced the lodestar to $36,000 and thus found it unnecessary to subtract fees incurred for unsuccessful or unrelated claims, or to award only a percentage of this amount since plaintiffs had settled all of their claims for full value. *Id.* at *5. The request for costs was also reduced from $1,710.94 to $407.73.

In *Alford v. Martin & Gass, Inc.,* 2009 WL 2447936 (E.D. Va. 2009) TELG sought $106,780.15 in fees and $3,260.93 in costs after a FLSA claim proceeded to a jury trial.[9] Of interest is that the plaintiff tendered a settlement offer that was close to the plaintiff's trial recovery, and the court noted that 61 percent of plaintiff's counsel's

---

had their claims submitted to the jury, as four of the plaintiffs did not testify, and there was a resulting failure of proof as to these claims. 2002 WL 465272 at *3-*4.

[8]These categories include charges for: 1) work performed to evaluate the claims before plaintiffs' counsel agreed to be retained, 2) background checks run on plaintiffs and defendants, 3) legal research into retaliation issues, which were not alleged in the Complaint, 4) other research unrelated to the FLSA claims, 5) case evaluation meetings, 6) time spent on efforts to recruit other potential plaintiffs, who did not join the lawsuit, and 7) work that appears duplicative or lacks sufficient description to evaluate its relevance to the civil action. *Jackson v. Estelle Place, LLC* 2009 WL 1321506, 3 (E.D.Va.,2009).

[9]The court granted summary judgment for the defendants on the plaintiff's discrimination claims.

fees on the FLSA claims were incurred after the February 13 offer, a factor that it weighed heavily in plaintiff's favor. Still, TELG was awarded $69,967.60 in fees and $1,190.93 in costs after the court adjusted both the hours worked and the hourly rate requested. The adjustments were primarily based on improper inclusion of time spent on discrimination claims, excessive time spent associated with preparing the fee petition, and private investigator fees. *Id.* at *4.

Defendants point to *Carlson v. Bosem M.D. P.A.*, 2007 WL 1496693 (S.D. Fla. 2007) as a "more similar" case to the case at bar. In *Carlson*, requested fees of over $135,000 were reduced to less than $5,000. This comparison is disingenuous, as there are striking factual dissimilarities. In *Carlson*, the district court conducted a de novo review of the magistrate judge's fee determination in light of the district court's subsequent determination that counsel "acted in bad faith throughout the litigation of this action." *Id.* at *6; compare *Goss v. Killian Oaks House of Learning*, 248 F.Supp.2d 1162 (S.D.Fla.2003) (refusing to award attorney's fees where the court found that plaintiff's attorney was churning the file); *Sahyers v. Prugh, Holliday & Karatinos, P.L.* 560 F.3d 1241 (11th Cir. 2009) (disallowing fees due to counsel's failure to make any effort to inform defendant of his client's impending claim or attempt to resolve dispute before filing suit, counsel's conscious disregard for basic collegiality and civility, and wasting of judicial resources). Neither such an extreme reduction nor a complete disallowance of fees is justified in this case.

Plaintiffs collected more then they could prove at the summary judgment stage, which is clearly a success. Plaintiffs' success can also be viewed through a different lens, however. There was no success whatsoever in convincing the rest of the more than 400 Cash's past and present employees to join the suit. Their non-participation may have been caused by the transitory nature of the employees, or by their living in remote areas of the Florida panhandle, or by fear of retribution such as not being allowed to work for Cash's in the future, or by disinterest given the apparent paucity of the provable damages, or even by lack of proof that other

employees were due any money.  Regardless, they did not appear.  Thus, as will be discussed more fully below, what started out as a probable "big case" deflated relatively quickly while a great amount of time was spent chasing phantoms.

Defendants suggest that this court may take into account whether the violation of the law was inadvertent or unintentional; whether and to what extent the party seeking fees was successful on the merits of the case; whether the public purpose of the underlying statute is advanced by the fees awarded; and whether the amount of fees was reasonably expended.  (Doc. 197 at 4).  After enumerating these four factors, defendants cite *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1571-1572 (11th Cir. 1985), an ERISA case.  Actually, *McKnight* listed these factors as an aid in determining *whether* a party should be awarded attorney fees, a question not present here. The origin of the four considerations is unclear, as *McKnight* actually lists five factors that comprise the nuclei of concerns that courts ought to consider in deciding a motion for attorney's fees in ERISA cases: (1) the degree of the opposing parties' culpability or bad faith; (2) whether the opposing party is able to satisfy an award of attorney's fees; (3) whether an award of fees would deter other persons acting under similar circumstances; (4) the legal significance and scope of the victory from a public perspective; and (5) the relative merits of the parties' positions. See *Freeman v. Continental Ins., Co.,* 996 F.2d 1116, 1119 (11th Cir. 1993) (citing *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1571-1572 (11th Cir. 1985) (citing *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir. 1980)); *Cromer-Tyler v. Teitel*, 294 Fed.Appx. 504, 508 (11th Cir. 2008).

In the context of this case the *McKnight* factors are at least instructive.  With respect to the first factor, plaintiffs have never proven or even contended that defendants intentionally engaged in unlawful conduct with respect to the plaintiffs' compensation.   A showing that defendants were guilty of sloppy bookkeeping because they did not properly record plaintiffs' time or compensate plaintiffs for

their "compensable travel time between stores" (doc. 190 at 7), is not equivalent to an intentional violation of the law. Plaintiffs concede that defendants paid overtime when the number of hours worked for one corporate defendant exceeded forty in a given week (doc. 190 at 9). This is evidence that the defendants were not acting in bad faith generally. More to the point, plaintiffs described their accomplishment in bringing this case, beyond the monetary settlement for the individual plaintiffs, by saying "Defendants will now more carefully review their multiple paychecks issued to each employee." *Id.* Establishing that a defendant in an FLSA case made computational errors and was guilty of occasional sloppy bookkeeping is a small accomplishment indeed. This consideration weighs in the defendants' favor.

The record is silent with respect to the defendants' ability to satisfy a fee award.

The weight of the third and fourth factors relating to deterrence and the legal significance of the victory again also favors the defendants due to the total absence of evidence of bad faith. The court concurs with defendants' observation in their memorandum that "[a]ccidental and unintentional miscalculations, by their very nature, cannot be deterred." (Doc. 197 at 13). And, there is no evidence that plaintiffs' case served any remedial purpose or social value except to the individual plaintiffs.

Finally, although defendant repeatedly claims that the plaintiffs' claims were settled for "nuisance value," regardless of the dollar amount involved, it cannot be denied that at least some of the plaintiffs' claims had merit, even if it was only those claims pursued in the motion for summary judgment. Thus the relative weight of the parties' positions on the fifth consideration weighs in favor of the plaintiffs.

Defendants also urge that the fees be reduced because counsel allegedly spent an unreasonable amount of time preparing and litigating this case. The FLSA attorney fee provision is intended to ensure effective access to the judicial process, but it should not serve as carte blanche permission for lawyers to expend inordinate

amounts of time and effort on cases that a minimal amount of investigation would have revealed to be of small value. If this court finds that the number of hours should be reduced, circuit precedent typically requires that the court identify the hours disallowed and explain why they are disallowed. *Villano v. City of Boynton Beach,* 254 F.3d 1302, 1311 (11th Cir. 2001) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994), citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). However, in cases where fee documentation is voluminous, an hour by hour analysis of a fee request would be impractical and is not required.

This case contains 80 pages of time entries totaling 808 hours, and as such certainly qualifies as "voluminous." See, e.g, *Villano*, 254 F.3d at 1311 (finding 569.3 hours to be sufficiently voluminous that no hour-by-hour analysis was required). However, the reason for the reduction must still be explained to enable the appellate court to conduct a meaningful review, if necessary. *Loranger,* 10 F.3d at 783 (cited in *Hepsen v. J.C. Christensen and Associates, Inc.*, 2010 WL 3329836 (11th Cir. 2010) and *Bivins v. Wrap it Up, Inc.,* 380 Fed. Appx. 888, 20101 WL 2114095 (11th Cir. 2010)). The Eleventh Circuit has upheld a district court decision that dramatically reduced the fee award in a case in which, as here, the facts presented were not novel or complex, no lengthy trial was involved, and there was a *de minimis* public benefit at stake. *See Bivins v. Wrap it Up., Inc.,* 380 Fed.Appx. 888 (11th Cir. 2010) (upholding district court's application of 85% across-the-board reduction in amount of fees awarded to prevailing party for trial level work and 40% reduction for appellate work);[10] compare also cases cited *supra*.

After a careful examination of plaintiffs' counsel's billing records, the following matters stand out as reasons supporting a reduction in fees:

---

[10]It should be noted that the Eleventh Circuit pointedly stated that the "court's decision to apply an 85-percent across-the-board reduction is troublesome" given the purpose of the statute, in that case § 1988. The court then noted that its agreement with the district court's decision was irrelevant, as this was not the same as finding that the court abused its discretion. 380 Fed. Appx. 888 at **3.

1.      In *Hensley v. Eckerhart, supra,* the Court stated that a fee applicant should "exercise 'billing judgment' with respect to hours worked[]" by recording only time reasonably spent.  461 U.S. at 437, 103 S.Ct. at 1941.  Billing judgment was far from the norm here.  Plaintiffs' counsel billed 129.6 hours before ever filing suit, an inordinate amount of time given the circumstances of this case.  More revealing, between April 9, 2008, when drafting the complaint began and May 7, 2008 when the complaint was filed, timekeepers recorded $5,207.50 worth of billable time *just in drafting, discussing, revising and filing the complaint.*[11]  That is by itself remarkable, but is made more so when one of the counts was later dismissed.  Plaintiffs' counsel holds itself out as an experienced employment firm, indeed a specialist in these cases, so the drafting of a relatively simple complaint cannot reasonably have required the input of so many timekeepers recording so much time.[12]  Indeed, it appears that both before and after the complaint was filed nearly every piece of evidence or bit of information that came in was reviewed by at least two lawyers and a paralegal, followed by a meeting by those timekeepers and others to discuss what had been learned.

2.      Minimal investigation would have shown that the case was likely worth no more than a modest amount.  Plaintiff Lowery was the first to contact the firm, and worked with it to locate other employees.  Lowery knew the business, had worked there for more than five years, and had worked as manager of one of the stores.  She was clearly in a position to give counsel a reasonably full picture of what the case entailed.  Thus, from the first client contact, counsel could or should have known that defendants comprised a relatively small regional operation rather than a corporate giant committing nationwide FLSA violations.  Instead, counsel's billing practice seems to have treated the case as an ATM machine.

_____

[11]This figure may be slightly overstated because some activities were mingled with others on some billing lines, but it is counsel's duty to make their billing entries clear.

[12]The mere fact that the complaint contained a lot of allegations does not make it complex.

3.    Neither plaintiffs' counsel nor any of the named plaintiffs appear to have made any effort to contact the defendants about the alleged under-payments before filing suit.

4.    After defendants tendered settlement offers to two plaintiffs in September, 2008, which was early in the case, plaintiffs' counsel directed their clients not to accept the offers, then made no immediate effort to discuss making a counter-offer or to contact defendants' counsel to discuss possible settlement.

5.    Plaintiffs' counsel have included in their billing inappropriate items such as time spent locating and contacting potential opt-in plaintiffs, time spent discussing generating potential press coverage, and time spent representing plaintiff Lowery with respect to an unemployment compensation hearing.

6.    Despite time expended on aggressive recruitment efforts, of the over 400 past and present Cash's employees who may have been eligible to opt in to the action, only eleven chose to participate, and only nine of those were deemed prevailing parties as to the FLSA claims.

7.    Plaintiffs did not prevail on the alleged FLSA collective action, the breach of contract or *quantum meruit* claims, or on plaintiff Lowery's whistle-blower claim.[13]

8.    This case was settled after minimal discovery and no depositions.  It did not involve a trial and had not even been scheduled for trial.

9.    This case did not advance a great public interest or vindicate important constitutional rights; it did not unearth evidence of evil intent.  Rather, it corrected some careless accounting errors.

Plaintiffs' counsel is entitled to a reasonable fee, not a windfall.  Had plaintiffs' counsel been truly attentive to the paucity of both the individual claims and the potential aggregate claims involved, and made reasonable efforts to work toward a

---

[13]Although defendants conceded that the settlement amount included a significant sum on plaintiff Lowery's whistle-blower claim, they assert that Lowery has not shown that she was a prevailing party with respect to this claim.  The whistleblower claim arose out of Lowery's telling a state agent of alleged liquor violations, not underpayments.  (Doc. 197 at 10).

settlement, this case would likely have been settled much earlier.  Based on all of the foregoing, the undersigned finds that a sixty percent (60%) reduction in fees is appropriate.

## COSTS

The FLSA provides for a mandatory award of "costs of the action" to a prevailing plaintiff.  29 U.S.C. § 216(b).  The Eleventh Circuit has held that in FLSA cases, courts may award those costs permitted by 28 U.S.C. § 1920.  *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988); *Moon v. Technodent Nat., Inc.*, 2009 WL 111678 (M.D. Fla. 2009) (citing *Glenn*); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir. 1999) ("costs" as used in § 216(b) are defined in 28 U.S.C. § 1920); *Gagnon v. United Technisource, Inc.,* 607 F.3d 1036, 1045 (5th Cir. 2010) (remanding for explanation of award of costs, noting applicability of § 1920); *Perez v. Carey Intern. Inc.,* 373 Fed.Appx. 907 (11th Cir. 2010) (declining to tax cost of special master in FLSA case where § 1920 did not expressly provide for such taxation).  Costs that may be awarded under § 1920 include: "(1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; [and] (4) fees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920.  *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007).

In *Johnson v. Mortham*, 950 F.Supp. 1117, 1126  (N.D. Fla. 1996) the court noted that section 1920 provides for a more limited recovery than section 1988 in that "section 1920 does not provide for taxation of the general expenses incurred by an attorney, such as travel expenses, telephone charges, or photocopying costs, nor does it include expert witness fees in excess of the limited expenses allowed for any

witness." Thus plaintiffs' recoverable costs should be limited to those under §
1920.[14]

Even if costs beyond those allowed by § 1920 were recoverable here, the great
majority of plaintiffs' costs are related "investigative" expenses. Defendants argue
that plaintiffs should not be compensated for time spent soliciting additional
plaintiffs for their unsuccessful collective and class actions. (Doc. 197 at 19; see
doc. 180-5 detailing costs). Defendants are correct. *American Civil Liberties Union
of Georgia v. Barnes*, 168 F.3d 423, 435-436 (11th Cir. 1999) (time spent looking for
and soliciting potential plaintiffs is not properly billed, although time spent
interviewing, corresponding and meeting with potential plaintiffs presents a closer
question), cited with approval in *Wales v. Jack M. Berry, Inc.* 192 F.Supp.2d 1313,
1323 (M.D. Fla. 2001); see also *Tinch v. City of Dayton*, 199 F.Supp.2d 758, 770 (S.D.
Ohio 2002) (prevailing party is not entitled to recover expenses incurred by an
investigator since those expenses are not set forth as recoverable costs under §
1920.); *Moon v. Technodent Nat., Inc.,* 2009 WL 111678 (M.D. Fla. 2009) (FLSA case

---

[14]Although at least one case has held that recoverable costs are not limited to what is
specifically enumerated in § 1920, this proposition does not appear to be entirely correct. In *Cullens
v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994), a civil rights case, the court
acknowledged that long distance telephone charges and travel expenses are appropriate expenses
under § 1920 "to the extent they are reasonable." 29 F.3d at 1494 (citing *Dowdell v. City of Apopka*,
698 F.2d 1181, 1192 (11th Cir. 1983)). Because *Cullens* was a Title VII case governed by a cost-shifting
statute, § 1920 was inapplicable. In any event this application of § 1920 is not supported by *Dowdell*.
*Dowdell*, which was not a FLSA case, reversed the denial of attorney travel expenses because the
district court, which had used Fed.R.Civ.P. 54(d) and § 1920 to bar recovery of such costs, "applied
the wrong law." 698 F.2d at 1188. It held that in cases where cost-shifting is expressly authorized by
statute, the traditional limitations of Rule 54(d) and § 1920 do not apply, and that under section § 1988
"with the exception of routine office overhead normally absorbed by the practicing attorney, all
reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of
settlement of the case may be taxed as costs." 698 F.2d at 1192. Title 42 U.S.C. § 1988(b) provides:
"In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and
1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United
States, a reasonable attorney's fee as part of the costs...." Some "costs" that are not available under
28 U.S.C. § 1920 are recoverable as "reasonable out-of-pocket expenses of the kind normally charged
to clients by attorneys, and thus should [be] included as part of the reasonable attorney's fees
awarded" under 42 U.S.C. § 1988. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (per
curiam) (citations omitted);

disallowing $255.00 expense for an investigator, citing *Tinch*); *Jackson v. Estelle Place, LLC*, 2009 WL 1321506 (E.D. Va. 2009) (in a case involving the same plaintiffs' counsel as the case at bar, no fees were awarded for the work of the private investigator); *Alford v. Martin & Gass, Inc.,* 2009 WL 2447936 (E.D. Va. 2009)(as in *Jackson*, the same plaintiffs' counsel as the case at bar were unsuccessful in their attempt to recover fees for the work of the private investigator). Investigation costs are not recoverable.

The only items on the seventeen page expense print-out provided by plaintiffs' counsel that are authorized by § 1920 are (1) the $350 filing fee at line 67, (2) the $110 service fee at line 70, and (3) a $75.10 witness fee at line 246.


Accordingly, it is ORDERED:

Defendants' Response to Plaintiffs' Memorandum of Law (doc. 198) is stricken from the record.

And it is respectfully RECOMMENDED:

That plaintiff's motion for entry of award of attorney's fees and legal expenses and incorporated memorandum of law (doc. 168) be GRANTED, and that the court enter an award of attorneys' fees to plaintiffs in the amount of $64,661.50 and costs in the amount of $535.10 for a total award of $65,196.60.


At Pensacola, Florida this 4th day of January, 2011.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**